*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re D GRANT, Minor.

UNPUBLISHED
January 23, 2020

No. 348893
Genesee Circuit Court
Family Division
LC No. 18-135056-NA

Before: CAMERON, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order of adjudication exercising jurisdiction over her minor child under MCL 712A.2(b). We discern no error regarding the trial court's exercise of jurisdiction over the minor child, and we affirm.

## I. BACKGROUND

Because this opinion discusses two of respondent-mother's minor children, both of whom share the same initials, we will refer to these two children as respondent-mother's "older child" and "younger child." The present appeal involves only the trial court's exercise of jurisdiction over the younger child. We note that respondent-mother had an additional child, DW, for whom she voluntarily relinquished her parental rights, but her parental rights to DW are not at issue in this appeal. The trial court also exercised jurisdiction over the older child and younger child with regard to respondent-father, but his parental rights are not at issue in this appeal, and we discuss issues surrounding him only as relevant to respondent-mother and the trial court's exercise of jurisdiction over her younger child.

In March 2018, respondent-mother gave birth to her older child. At birth, the older child tested positive for marijuana. In April 2018, the Department of Health and Human Services (DHHS) filed a petition seeking removal of the older child from respondents' home. In June 2018, the trial court authorized the filing of the petition. In August 2018, the trial court exercised jurisdiction over the older child, based on respondent-mother's plea of admission to some of the allegations in that petition. The trial court found that it was contrary to the older child's welfare to remain in the home because there was a history of domestic violence between respondents, making their continued relationship a risk of harm absent respondents' completion of and benefit

-1-

from services. The trial court entered an order of disposition that required respondent-mother to complete a substance-abuse assessment and participate in random drug screening.

In January 2019, respondent-mother gave birth to her younger child. At birth, the younger child also tested positive for marijuana. The younger child was born prematurely and was hospitalized for approximately one month after his birth.

## A. THE PETITION

On February 27, 2019, the DHHS filed a petition seeking removal of the younger child from respondents' care. The petition alleged that Children's Protective Services (CPS) had received a complaint in January 2019, approximately one week before the birth of the younger child, regarding conditions in respondents' home. The petition alleged that CPS found the home to be in disarray, with forks on the floor within reach of the older child, trash and clothing strewn throughout the home, dog feces in the enclosed sun porch, broken tile on the bathroom and kitchen floors, and toys and blankets in the pack-n-play of the older child. The petition further alleged that the younger child was born prematurely and tested positive for marijuana at birth and that, four days after the birth of the younger child, respondent-father tested positive for cocaine. The petition further alleged that respondents had failed to benefit from in-home services, and that there had been a "total lack of progress with substance abuse services, and about the family not following unsafe sleep protocol" for the older child.

According to the petition, CPS also received allegations regarding domestic violence between respondent-father and respondent-mother, as well as allegations that respondent-father had sexually abused respondent-mother's sister, who was then living with respondents. CPS workers discovered large bruises on respondent-mother, who denied any domestic violence and claimed that she received the bruises because she fell.

The petition also alleged that respondent-mother had voluntarily released parental rights to DW, and that a trial court had previously terminated respondent-father's parental rights to five of his other children. Regarding the services offered to respondent-mother during the case involving DW, the petition alleged that she was offered a psychological evaluation and parenting classes. Respondent-mother completed the psychological evaluation, which concluded that she had an "extremely limited understanding of parenting." The petition alleged that respondent-mother did not successfully complete the offered services in that prior case.

## B. PRE-ADJUDICATION PROCEEDINGS

On February 27, 2019, the referee held a preliminary hearing at which respondent-mother appeared. During that preliminary hearing, the referee informed respondent-mother of her rights and she acknowledged that she understood those rights. Respondent-mother waived the reading of the petition and waived a preliminary examination. The CPS caseworker indicated that the younger child was still hospitalized, but was ready for discharge from the hospital if an appropriate placement could be found for him. The caseworker testified that the DHHS was seeking placement of the younger child outside respondents' home due to "concerns of physical neglect, the ongoing substance abuse by father, and noncompliance with substance abuse services by both parents. Neither have really shown that they have benefitted from . . .

recommended service intervention." Both respondents denied the allegations contained in the petition.

The referee authorized the filing of the petition, finding that it was "contrary to the welfare of the children to remain in the home due to unfit home conditions. The home environment is an inappropriate place. There are unsafe sleep practices for [the older child]. There are substance abuse concerns and there's also concerns regarding domestic violence." The referee set the matter for a contested-pretrial hearing before the trial court on March 12, 2019.

On March 7, 2019, the trial court held a preliminary hearing involving respondent-mother's older child. Although respondents were not present, their attorneys were present for the hearing. The CPS caseworker reported:

> Well, we've had ongoing concerns or I have with their home conditions which I had to address on countless occasions. Neither parent has engaged in any substance abuse treatment that was previously ordered or any assessments. Father continues to test positive for cocaine, and last week, when I made an unannounced home visit, neither parent knew where the eldest child was and he was found under several heavy blankets on the couch.[1]

The CPS caseworker also stated that respondents had been participating with in-home services, but she did not feel that respondents had benefited from those services and opined that respondents had not "made any progress."

The trial court found that the services offered by the DHHS were appropriate and that the older child's placement outside the home was appropriate. The trial court further concluded, "No progress has been made that I can see." The trial court therefore continued the older child with the DHHS for permanency planning, placement, care, and supervision. The trial court's staff reminded the trial court that the hearing involved only respondent-mother's older child and that the trial court had not yet taken jurisdiction over her younger child.

On March 12, 2019, the trial court held a contested-pretrial hearing regarding respondent-mother's younger child. Respondent-mother was present for that hearing, along with her attorney. During this hearing, respondent-father consented to the trial court's exercise of jurisdiction over the younger child, but respondent-mother did not. After the trial court assumed jurisdiction over the younger child with respect to respondent-father, the prosecutor reminded the trial court, "We just need to set a trial as it relates to mother." The following exchange then occurred on the record:

> *The Court*: All right. We've got to set a hearing date for mother and then a review [hearing], I think. So, madam clerk—do we already have a review [hearing]?

---

[1] The "eldest" child referred to in this testimony is the child referred to in this opinion as respondent-mother's older child, who was then 11 months old.

[*CPS caseworker*]: We do. It's scheduled for May 30th at 1:45.

*The Court*: May 30, right? Okay. So we just need a hearing date for mom as to the younger child.

(Miscellaneous discussion in Courtroom; not related to the within matter—not transcribed)

*The Court*: Hearing date related to jurisdiction.

[*Respondent-mother's attorney*]: What date was it, Your Honor?

*The Court*: We're getting it.

[*Respondent-mother's attorney*]: Okay. Sorry. I thought you said a date.

*The Court*: If that's what it is, that's when it is. April 24th. We have some scheduling issues, but we'll work it out. April 24th. Anything else?

[*The prosecutor*]: No, Your Honor. Thank you.

*The Court*: Okay.

After stating on the record—in the presence of both respondent-mother and her attorney—that the date of her adjudication trial would be April 24, 2019, the trial court provided respondent-mother with a written order of disposition that included the trial date.

### C. ADJUDICATION TRIAL

On April 24, 2019, the trial court held the adjudication trial regarding respondent-mother. Although she did not appear for the trial, her counsel was present. At the trial, both the prosecutor and respondent-mother's counsel waived opening statements, and the DHHS presented two witnesses: Joseph Richardson, a CPS worker, and Mindy Gibbs, a foster-care specialist. Neither respondent-mother nor the children's guardian-ad-litem (GAL) presented any witnesses or testimony.

Richardson testified that he was familiar with respondent-mother because he had conducted multiple investigations regarding her minor children. He stated that the trial court had already exercised jurisdiction over respondent-mother's older child, but had not yet exercised jurisdiction over the younger child, who was three months old. Richardson testified that in 2016, the trial court had ordered respondent-mother to participate in services "to rectify failure to protect and abandonment" regarding her other child, DW. Although respondent-mother completed a psychological evaluation as ordered, she did not successfully complete the other services in the 2016 treatment plan. Richardson testified that respondent-mother had voluntarily terminated her parental rights to DW during that previous proceeding.

Richardson further testified that in 2018, the DHHS had again investigated allegations against respondent-mother for "physical neglect in the home," including "lack of food, running

water, conditions of the home, those type of allegations," and that the trial court had taken jurisdiction over respondent-mother's older child in August 2018. He stated that respondent-mother had acknowledged substance-abuse issues, and that the trial court had ordered her to participate in random drug screens, substance-abuse assessment, and in-home services. Richardson testified that mother had participated with the in-home services, but she had not successfully completed those services.

Richardson testified that, since January 2018, he had been concerned about the conditions in respondents' home, including safety hazards for young children, such as the presence of animal feces, the lack of baby gates, and broken tile on the kitchen floor. Richardson described "dog feces, piles of clothes, clutter, garbage, just general uncleanliness of the floors especially with young children crawling, being on the floors," and "old food on the ground, that kind of thing." Richardson conceded that respondent-mother had participated in the in-home services offered to her, but he opined that she did not benefit from those services. When a caseworker directed respondent-mother to clean something specific in the home, she did so, but "in less than a week it would be back to the same conditions." This caused Richardson to believe that "the safety hazards would continue for the younger children especially." He reported that, as of his most recent visit to the home on April 2, 2018, "the condition remained the same as far as safety hazards" for the children.

Richardson also expressed concern regarding the lack of safe-sleeping arrangements for respondent-mother's young children. He recalled that the DHHS had provided respondents with a pack-and-play to provide a safe-sleeping arrangement for the older child. He conceded that, when he later visited respondents' home, the pack-and-play was present. In addition, Richardson recalled that workers visited the home, and respondents had no idea where respondent-mother's older child was located. Based on his observations, Richardson opined that respondent-mother was not benefiting from the services provided by the DHHS and ordered by the trial court.

Richardson also reported that he had also investigated allegations that respondent-father had sexually assaulted respondent-mother's younger sister when she lived in respondents' home. Under the terms of a safety plan, respondent-father left the home for a time, but he had returned to the home once respondent-mother's older child was removed and placed into foster care. Richardson expressed concern regarding respondent-father's return to the home.

Richardson summarized his testimony by stating that he was concerned not only regarding the cleanliness of the home, but also regarding respondents' failure to complete services ordered in the open case concerning respondent-mother's older child.

Gibbs testified that she had been working with respondent-mother for approximately one month, since the trial court exercised jurisdiction over her older child. Gibbs opined that respondent-mother had been "somewhat" compliant with services because she completed an intake packet of paperwork and attended parenting time, but that respondent-mother was not "doing anything else." Gibbs stated that respondent-mother had "a substantial history of drug use," involving more substances than simply marijuana. Gibbs testified that respondent-mother had not completed any drug screens, and that her contact with the caseworker was inconsistent and infrequent. Gibbs stated that respondent-mother denied any drug use and refused to

participate in drug screens. Yet, the younger child was born positive for marijuana, indicating that respondent-mother was untruthful with service providers.

Gibbs admitted that the trial court had not yet ordered respondent-mother to participate in any services regarding her younger child, including the provision of drug screens, because the trial court had not yet exercised jurisdiction over that child. Yet, Gibbs testified that the trial court had ordered respondent-mother to participate in services regarding her older child, and she had failed to comply with that order.

Gibbs testified that respondent-mother admitted that respondent-father had resumed living with her. Gibbs expressed concern that the two had resumed their relationship, and that there had been previous instances of domestic violence and substance-abuse concerns regarding respondent-father. Gibbs stated that respondent-mother was participating in court-ordered parenting time, but that she was inconsistent in her contact with the agency and that the last time she had contact with respondent-mother was by telephone on April 3, 2019.

After the parties rested, the trial court inquired regarding the service providers' last dates of contact with respondent-mother. The trial court was informed that respondent-mother had last participated with in-home services on February 27, 2019, and had last spoken with Gibbs by telephone on April 3, 2019. The prosecutor noted that "mother was here at the last" contested-pretrial hearing to receive notice of the adjudication trial, and that she was "on notice" of the trial date. The trial court asked respondent-mother's counsel if she had attempted to contact her client, and counsel responded "I tried texting her and sent her a Facebook message. I haven't heard back."

The trial court stated its findings of fact as follows:

> All right. Thank you, counsel. This is a request for jurisdiction as it relates to the one minor child that was just born . . . . You know, there were three or four themes through the testimony of our two caseworkers. If we were only dealing with one of them, I'm not sure what the Court would do.
>
> I think there are four or five things that stand out to the Court as I listened to the testimony. Number one, there is a previous termination as it relates to mother and other children. Number two, she is not present. Number three, [counsel] is right, marijuana is looked at a little bit differently now, but the child was born with marijuana. If I heard the testimony correctly, mother denied any drug use. It looks like she's probably got some history of it. Number four, we took jurisdiction on the other child and there were services and a game plan put in place and it doesn't look like she is fully complying with that.
>
> We all know of cluttered homes and, if I heard the testimony correctly, I think it was about a week before she gave birth and, as the home was described, yeah, it was more than cluttered. I don't think there was any question. But I think you combine all of those things not being present, the termination, the marijuana, not compliant with services, the condition of the home, I'm satisfied there is more

than a preponderance of evidence for the Court to take jurisdiction and that will be the finding of the Court.

The trial court concluded that the DHHS had proven, by a preponderance of the evidence, the existence of statutory grounds for exercising jurisdiction over the younger child under MCL 712A.2(b)(1) and (2). The trial court therefore assumed jurisdiction over respondent-mother's younger child and placed the child outside respondents' home.

This appeal followed.

## II. ANALYSIS

## A. NOTICE OF ADJUDICATION TRIAL DATE

Respondent-mother first argues that this Court must set aside the trial court's order exercising jurisdiction over her younger child because she was not provided written notice of the April 24, 2019 adjudication trial, in violation of MCR 3.920(D). Respondent-mother argues that this failure deprived her of her substantial rights to participate in the adjudication trial. She further argues that, if she had been properly notified of the trial date, she would have appeared and she "would have been able to provide a proper defense through witness testimony and documentation." Specifically, respondent-mother argues that she would have personally testified at the adjudication trial and that she would have (1) contradicted the testimony of the DHHS's witnesses regarding her lack of involvement in services, and (2) testified that her home was clean and appropriate for the children.

This issue involves the interpretation of a court rule, which is a question of law that we review de novo. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Chapter 3.900 of the Michigan Court Rules governs proceedings involving juveniles, and MCR 3.920 governs service of process in such proceedings. That rule states:

(D) Notice of Hearing.

(1) General. Notice of a hearing must be given in writing or *on the record* at least 7 days before the hearing except as provided in subrules (D)(2) and (D)(3), or as otherwise provided in the rules. [MCR 3.920(D) (emphasis added).]

Respondent-mother argues that the trial court was required to provide her with a written notice of hearing under MCR 3.920(D). This argument is without merit, given the plain language of the court rule stating that notice of a hearing must be given either in writing or on the record. Therefore, if the trial court gave respondent-mother notice of the adjudication trial "on the record," at least 7 days before the trial date, then her appellate argument fails.

As explained above, at the March 12, 2019 contested-pretrial hearing, the trial court stated on the record—in respondent-mother's presence—that her adjudication trial would be held on April 24, 2019. Although respondent-mother acknowledges that the trial court stated this on the record, she argues that the trial court's statement was not definitive because the trial court referred to various scheduling problems and stated that "we need a hearing as to mom." This argument is without merit. As the hearing transcript makes clear, the trial court's statement

regarding the date of the adjudication trial was definitive. The trial court indicated that a hearing date was required for the adjudication trial regarding respondent-mother and the younger child. The trial court then stated, "If that's what it is, that's when it is. April 24th. We have some scheduling issues, but we'll work it out. April 24th." The "scheduling issues" referred to by the trial court obviously referred to some potential conflicts for the trial court, not for respondent-mother. The record is clear that the trial court scheduled respondent-mother's adjudication trial for a set date and informed her of that date on the record, in compliance with MCR 3.920(D)(1).

Because the trial court provided respondent-mother notice of the adjudication trial on the record in compliance with MCR 3.920(D)(1), we need not decide whether the written order of disposition provided to respondent-mother also complied with that court rule. Respondent-mother received adequate notice of the jurisdiction trial. Therefore, her due-process rights were not infringed, and her argument on appeal is without merit.

## B. STATUTORY BASIS FOR JURISDICTION

Respondent-mother next argues that the trial court erred in assuming jurisdiction over her younger child because the DHHS failed to establish a statutory basis for jurisdiction. Before a trial court may exercise jurisdiction over a child in a child-protection proceeding, the petitioner must prove by a preponderance of the evidence the existence of one or more of the statutory grounds for jurisdiction alleged in the petition. *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014). We review the trial court's decision to exercise jurisdiction for clear error in light of the trial court's findings of fact. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004).

The petition filed by the DHHS regarding respondent-mother's younger child alleged the existence of the statutory grounds set forth in MCL 712A.2(b)(1) and (2). The statute provides:

The court has the following authority and jurisdiction:

* * *

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b).]

The trial court concluded that petitioner had proven the existence of both of these statutory grounds by a preponderance of the evidence.

Respondent-mother acknowledges the testimony of petitioner's witnesses that she had not benefited from prior services and that she was not screening for drugs. Yet, she argues that the petitioner's witnesses could not testify why they believed that she had not benefited from those prior services. Respondent-mother therefore argues that, based on the evidence provided, the trial court lacked sufficient grounds to determine that her younger child came within its jurisdiction. She argues that the trial court clearly erred in finding jurisdiction over the younger child and entering an order of disposition that removed the younger child from her home.

Our review of the record indicates that the trial court did not clearly err in determining that the petitioner had proven the existence of at least one statutory ground for the exercise of jurisdiction, by a preponderance of the evidence. The petitioner presented witnesses who testified regarding the condition of respondent-mother's home over time. These witnesses testified that they attempted to work with respondent to help her rectify the conditions of the home, but the home repeatedly returned to an unacceptable condition after only a short time. The testimony presented by the DHHS established by a preponderance of the evidence the existence of statutory grounds for jurisdiction under MCL 712A.2(b)(2).

Affirmed.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle